AO 106A  (08/18)  Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT

for the

In the Matter of the Search of
*(Briefly describe the property to be searched
or identify the person by name and address)*

Meta Platforms, Inc.; 1601 Willow Road, Menlo Park, CA
94025; Host of Account associated with name "turitosrt";
Account Identifier: 6923328247; ("Target Account")

)
)
)
)
)
)

Case No.   '24  MJ0817

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, which is hereby incorporated by reference.

located in the _____Northern_____ District of _____California_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, which is hereby incorporated by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

❐ contraband, fruits of crime, or other items illegally possessed;

❐ property designed for use, intended for use, or used in committing a crime;

❐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 8 U.S.C. §§ 1324 | Alien Smuggling Offenses further described in Attachment B |
| Title 18 U.S.C. § 371 | Conspiracy |

The application is based on these facts:

See attached Affidavit of Benjamin Moretti, Border Patrol Agent, which is hereby incorporated by reference.

☑ Continued on the attached sheet.

❐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Benjamin Moretti*
*Applicant's signature*

Benjamin Moretti, Border Patrol Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____telephone_____ *(specify reliable electronic means)*.

Date:  February 23, 2024

*Judge's signature*

City and state:  San Diego, California

Honorable Michael S. Berg, U.S. Magistrate Judge
*Printed name and title*

## **AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEARCH WARRANT**

I, Benjamin Moretti, a Border Patrol Agent-Intelligence with the United States Border Patrol, Campo Station Intelligence Team, being duly sworn, state:

## **INTRODUCTION**

1.     I make this affidavit in support of an application for a search warrant in furtherance of an investigation conducted by agents of the United States Border Patrol ("BP") to search Meta Platforms, Inc. ("Instagram"), located at 1601 Willow Road, Menlo Park, California 94205, as more particularly described in Attachment A, for an account associated with the following user name**:** turitosrt; Account Identifier: 6923328247; https://www.instagram.com/turitosrt/ (**"Target Account")** suspected of being used by an individual named Arturo Valle Jr., for items described in Attachment B, that constitute evidence, fruits, and instrumentalities of violations of federal criminal law, Title 8 U.S.C. §§ 1324(a)(1)(A)(ii) and (a)(1)(A)(iii) (Harboring and/or Transporting Certain Aliens), Title 8 U.S.C. § 1324(a)(1)(A)(i) (Unlawful bringing of certain aliens into the United States), Title 8 U.S.C. § 1324(a)(1)(A)(v)(II) (Aiding or abetting), Title 8 U.S.C. § 1324(a)(1)(A)(v)(I) (Conspiracy), Title 8, U.S.C. § 1324 (a) (2) (B) (ii) (Bringing in Aliens for Financial Gain), Title 18, U.S.C. § 371 (Conspiracy) (the "Subject Offenses").

2.     Based on the investigation in this case as set forth below, I submit there is probable cause to believe that evidence of a violation of the Subject Offenses, will be found on the **Target Account.** There is also probable cause to search the information described in Attachment A for evidence of these crimes, as described in Attachment B.

3.     My knowledge of the facts alleged in this Affidavit arises from my training and experience, my personal observations, my participation in the federal investigation described herein, my conversations with other law enforcement agents involved in this investigation, and my review of records obtained during this investigation.  Because this Affidavit is submitted for the limited purpose of securing a search warrant to search the **Target Account**, it does not include every fact known to me concerning the investigation.

**EXPERIENCE AND TRAINING**

4.      I am a U.S. Border Patrol Agent-Intelligence (BPA-I) within the United States Department of Homeland Security (DHS), Customs and Border Protection ("CBP"), USBP.  I have been employed as a USBP Agent since March 2008.  I am presently assigned to the San Diego Sector Intelligence Unit ("SIU") at the Campo Border Patrol Station (CAO SIT).  I am a graduate of the United States Border Patrol Academy at the Federal Law Enforcement Training Center ("FLETC") in Artesia, New Mexico.  I have received training, and have experience in, investigating alien smuggling, identifying immigration violations, and enforcing numerous immigration and customs laws within the United States. Prior to my appointment as Border Patrol Agent-Intelligence my duty location was Brown Field Border Patrol Station where I was assigned to the Targeted Enforcement Unit ("TEU") under the Brown Field Intelligence Unit.

5.      As a BPA-I, I am a Federal Law Enforcement Officer within the meaning of Rule 41(b) of the Federal Rules of Criminal Procedure, that is, a government agent engaged in the enforcement of the criminal laws of the United States, and thereby authorized to request issuance of federal search and seizure warrants.  As an agent with the Border Patrol, my responsibilities include the investigation of possible violations of Immigration and Nationality laws (Title 8, United States Code), including alien smuggling in violation of Title 8, United States Code, Section 1324, and related offenses.

6.      Through investigations, training, law enforcement intelligence sources, and conversations with senior agents and task force officers/agents, I have become familiar with the operations of both large and small alien and drug smuggling organizations (ASOs/DTOs) operating within the United States and internationally. Based on my training and experience, I have learned that alien and drug smugglers work in concert with one another, and often use coded and slang terminology when communicating with one another.

7.      I have arrested and interviewed numerous smugglers.   Through these

*Affidavit in Support Search Warrant*

experiences, I have become familiar with the activities of those who coordinate smuggling events and the practices employed by the drivers/smugglers locally and abroad, including recruitment methods, transportation methods and tactics used to communicate with the drivers and avoid detection by law enforcement. I have been the case agent on numerous investigations that have led to the issuance of search, arrest, and tracking warrants for which I have been the affiant.

8.      Through my training and experience, I have gained a working knowledge of and insights into the workings of criminal organizations. I have also gained extensive information as to the operation habits of persons who make their living as alien and narcotics smugglers. I have become familiar with the behavior, speech, routes and method of operation utilized by criminal organizations to avoid detection and apprehension by law enforcement officers.

## FACTS SUPPORTING PROBABLE CAUSE

### A. Identification of Arturo Valle as the user of the Target Account

9.      I believe that Arturo Valle Jr. (Valle) is the user of the **Target Account**. Agents served Instagram with a subpoena pertaining to the **Target Account,** which revealed the following phone number was used to create the account 702-881-5890. NCIS Analyst Larmie Svetlik conducted a query of the phone number, which revealed Valle's mother, Akimi Rodriguez as the subscriber. Based on the context of the communications and posts, and where Arturo's nickname is "Arturito," which is similar to the name of the **Target Account**, I believe the **Target Account** is used by Valle.

10.      Agents looked at a prior booking photo of Valle:



11.     Investigators also looked at a photo posted on the **Target Account**:



12.     Investigators carefully analyzed Valle's booking photo to this photo and others on the **Target Account** and concluded that Valle is shown in pictures of the **Target Account.** In the above-referenced photo, Valle appears on the left-hand side of the group.

13.     Thus, based on the investigation, including the subscriber information for the **Target Account** and the photographs on the **Target Account**, I believe that Valle is the user of the **Target Account**.

14.     Agents obtained a search warrant (22MJ3890) for the activee.64 Instagram account believed to be used by Alejandro Anguiano (aka "Alex") and found alien

smuggling communications between Alex and Valle, on the **Target Account.** Based on my knowledge of this investigation, including the messages described below, Valle has used the **Target Account** in furtherance of the Subject Offenses.

**B. Probable Cause that the Target Account used for the Subject Offenses**

15. On or about September 15, 2021, the following messages were exchanged over Instagram.

> activee.64 (Alex): You sent a voice message. [voice message]"Try to look for some SUVs, if you have little SUVs send them dude. Make sure they're there around four in the afternoon and like two more for seven or eight o'clock in the night time fool. We are trying to move a group of eight to see if can load four and four in the SUVs and in the cars two and two see if we can load more or three and three in the cars. I just know about the SUVs right now it's for sure for the group of eight, but for the cars they are not sure if the group is it's a group of four or six."
>
> **Target Account** (Valle):

asking if two drivers were needed for alien smuggling. When Alex responded, "In afternoon foo" I believe Alex was telling Valle the drivers would be needed in the afternoon.

19.    On or about February 6, 2022, the following messages were exchanged over Instagram.

>  activee.64 (Alex): So what's going on How many pollos have loaded
>
>  **Target Account** (Valle): We bout to load rn.  A Ram n Durango
>
>  **Target Account** (Valle): Ur money on da way too

20.    I believe Alex and Valle were discussing illegal aliens getting into a vehicle to be transported. When Alex said, "How many pollos have loaded," I believe he was asking how many undocumented individuals were loaded into a car. I know based on my training and experience, including from this investigation that "pollos" is a commonly used slang term for undocumented individuals (aka illegal aliens) who are being smuggled. When the **Target Account** said, "We bout to load rn.  A Ram n Durango" I believe Valle was telling Alex that the undocumented individuals were going to get into the vehicles soon and that the vehicles were a Ram and a Durango.

21.    Prior to July 19, 2022, Alex, Valle, and others coordinated together to get a van ready, including by making it look like an "Amazon" branded van, to help facilitate the transportation of undocumented individuals within the United States. On July 19, 2022, one of the drivers of the van, W-3, was arrested for transporting illegal aliens for financial gain. Inside the van were five undocumented individuals. One day prior to W-3's arrest, on July 18, 2022, Alex used his Instagram account to message Valle who used the Instagram username, "turitosrt" about picking up the "Amazon" van which was ultimately used by W-3 to transport the five illegal aliens for financial gain. Within the Instagram message conversation, Alex sent the **Target Account** a photograph of the van:

1
2
3
4
5
6
7
8
9
10
11



12 Valle, through the **Target Account**, told Alex, "We gotta still add the reverse horn Cause

13 every Amazon van has em by law." Based on the conversation, I believe when the message

14 about the horn was sent, Alex and Valle were discussing what else they needed to do in

15 order to get the van ready to smuggle aliens. On July 19, 2022, Alex messaged Valle at the

16 **Target Account**, "Wake up. Im getting in trouble. Sepi on me. Where is the driver for

17 van." I believe when Alex said, "Im getting in trouble. Sepi on me" he was referring to a

18 co-conspirator, "Sepi," involved in the transportation of illegal aliens. I believe when Alex

19 said, "Where is the driver for van," he was asking where the driver to transport illegal aliens

20 in the van was at.

21      22.     Agents have continued to monitor the public postings of the **Target Account**

22 because it has been left open to the public. Valle, using the **Target Account**, was recruiting

23 for drivers as of April 13, 2023, in the following post from that date:

24
25
26
27
28

*Affidavit in Support Search Warrant*



The post is a map of the rural border communities of Pine Valley, Campo, Potrero, and Tecate, Mexico. Based on the phone, hatchling, and taxis emojis, I believe this photo is referring to illegal alien smuggling. Specifically, I believe the hatchling is an emoji used to reference "pollos" (literally, chickens) or illegal aliens. As described above, pollos is a slang term commonly used to refer to illegal aliens.

23.     On the **Target Account,** Valle has posted photos that include large amounts of currency. The following picture was observed on May 1, 2023:

1
2
3
4
5
6
7
8
9
10
11
12
13
14



I believe the photo shows Valle holding currency. Further, based on this investigation and my training and experience, I believe the money is tied to the Subject Offenses.

**C. Charges against Valle**

24.     On or about April 12, 2023, Valle, Alex, and other co-conspirators were charged with conspiracy to transport certain aliens, and arrest warrants were issued (23mj1341-MSB).

25.     On or about May 3, 2023, a federal grand jury found probable cause that Valle and co-conspirators had committed the offense of conspiracy to transport certain aliens and returned an indictment (23cr0823-LL).

26.     There is an outstanding arrest warrant for Valle.

**D. Conclusion**

27.     There is probable cause to believe that Valle continuously used the **Target Account** between September 15, 2021, up to and including May 1, 2023, in furtherance of

the Subject Offenses. Accordingly, I request permission to search the **Target Account** beginning on September 15, 2021 (date that **Target Account** communicates about smuggling communications with Alex) up to and including May 1, 2023 (the date that the **Target Account** is posting a picture of a large stack of currency).

## GENUINE RISKS OF DESTRUCTION OF EVIDENCE

28.     Based on my experience and training, and the experience and training of other agents with whom I have communicated, electronically stored data can be permanently deleted or modified by users possessing basic computer skills. In this case, if the subject receives advance warning of the execution of this warrant, there will be a genuine risk of destruction of evidence.

## PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE

29.     On or about August 21, 2023, I received a search warrant for the **Target Account** (23-mj3033-AHG). I received the return from Meta on or about September 19, 2023.[1] I reviewed the return. I did not, however, finish the review within 120 days. Promptly upon realizing that the deadline had expired, I terminated my review. The return had more than 79,000 pages of information. Due to an oversight, I did not, however, ask for an extension of time. Accordingly, I am now seeking this warrant.

## TECHNICAL BACKGROUND

30.     Instagram is a service owned by Meta, a United States company and a provider of an electronic communications service as defined by 18 U.S.C. §§ 3127(1) and 2510. Specifically, Instagram is a free-access social networking service, accessible through its website and its mobile application, that allows subscribers to acquire and use Instagram accounts, like the target account(s) listed in Attachment A, through which users can share

---

[1] The prior search warrant requested Meta to provide a return for the "turitosrt" Instagram account. Meta provided information for that account. Meta also provided information for the Instagram handle"turitozl1," where the "turitosrt" and "turitozl1" had the same account identifier, 6923328247, and the user changed the account name from "turitosrt" to "turitozl1." The account associated with account identifier 6923328247 appears to have deleted the account. However, law enforcement officers had requested preservation of the account.

messages, multimedia, and other information with other Instagram users and the general public.

31.     Meta collects basic contact and personal identifying information from users during the Instagram registration process. This information, which can later be changed by the user, may include the user's full name, birth date, gender, contact e-mail addresses, physical address (including city, state, and zip code), telephone numbers, credit card or bank account number, and other personal identifiers. Meta keeps records of changes made to this information.

32.     Meta also collects and retains information about how each user accesses and uses Instagram. This includes information about the Internet Protocol ("IP") addresses used to create and use an account, unique identifiers and other information about devices and web browsers used to access an account, and session times and durations.

33.     Each Instagram account is identified by a unique username chosen by the user. Users can change their usernames whenever they choose but no two users can have the same usernames at the same time. Instagram users can create multiple accounts and, if "added" to the primary account, can switch between the associated accounts on a device without having to repeatedly log-in and log-out.

34.     Instagram users can also connect their Instagram and Facebook accounts to utilize certain cross-platform features, and multiple Instagram accounts can be connected to a single Facebook account. Instagram accounts can also be connected to certain third-party websites and mobile apps for similar functionality. For example, an Instagram user can "tweet" an image uploaded to Instagram to a connected Twitter account or post it to a connected Facebook account, or transfer an image from Instagram to a connected image printing service. Meta maintains records of changed Instagram usernames, associated Instagram accounts, and previous and current connections with accounts on Meta and third-party websites and mobile apps.

35.     Instagram users can "follow" other users to receive updates about their posts and to gain access that might otherwise be restricted by privacy settings (for example, users can choose whether their posts are visible to anyone or only to their followers). Users can also "block" other users from viewing their posts and searching for their account, "mute" users to avoid seeing their posts, and "restrict" users to hide certain activity and prescreen their comments. Instagram also allows users to create a "close friends list" for targeting certain communications and activities to a subset of followers.

36.     Users have several ways to search for friends and associates to follow on Instagram, such as by allowing Meta to access the contact lists on their devices to identify which contacts are Instagram users. Meta retains this contact data unless deleted by the user and periodically syncs with the user's devices to capture changes and additions. Users can similarly allow Meta to search an associated Facebook account for friends who are also Instagram users. Users can also manually search for friends or associates.

37.     Each Instagram user has a profile page where certain content they create and share ("posts") can be viewed either by the general public or only the user's followers, depending on privacy settings. Users can customize their profile by adding their name, a photo, a short biography ("Bio"), and a website address.

38.     One of Instagram's primary features is the ability to create, edit, share, and interact with photos and short videos. Users can upload photos or videos taken with or stored on their devices, to which they can apply filters and other visual effects, add a caption, enter the usernames of other users ("tag"), or add a location. These appear as posts on the user's profile. Users can remove posts from their profiles by deleting or archiving them. Archived posts can be reposted because, unlike deleted posts, they remain on Meta's servers.

39.     Users can interact with posts by liking them, adding or replying to comments, or sharing them within or outside of Instagram. Users receive notification when they are tagged in a post by its creator or mentioned in a comment (users can "mention" others by

adding their username to a comment followed by "@").An Instagram post created by one user may appear on the profiles or feeds of other users depending on a number of factors, including privacy settings and which users were tagged or mentioned.

40.     An Instagram "story" is similar to a post but can be viewed by other users for only 24 hours. Stories are automatically saved to the creator's "Stories Archive" and remain on Meta's servers unless manually deleted. The usernames of those who viewed a story are visible to the story's creator until 48 hours after the story was posted.

41.     Instagram allows users to broadcast live video from their profiles. Viewers can like and add comments to the video while it is live, but the video and any user interactions are removed from Instagram upon completion unless the creator chooses to send the video to IGTV, Instagram's long-form video app.

42.     Instagram Direct, Instagram's messaging service, allows users to send private messages to select individuals or groups. These messages may include text, photos, videos, posts, videos, profiles, and other information. Participants to a group conversation can name the group and send invitations to others to join. Instagram users can send individual or group messages with "disappearing" photos or videos that can only be viewed by recipients once or twice, depending on settings. Senders can't view their disappearing messages after they are sent but do have access to each message's status, which indicates whether it was delivered, opened, or replayed, and if the recipient took a screenshot. Instagram Direct also enables users to video chat with each other directly or in groups.

43.     Instagram offers services such as Instagram Checkout and Facebook Pay for users to make purchases, donate money, and conduct other financial transactions within the Instagram platform as well as on Facebook and other associated websites and apps. Instagram collects and retains payment information, billing records, and transactional and other information when these services are utilized.

44.     Instagram has a search function which allows users to search for accounts by username, user activity by location, and user activity by hashtag. Hashtags, which are

topical words or phrases preceded by a hash sign (#), can be added to posts to make them more easily searchable and can be "followed" to generate related updates from Instagram. Meta retains records of a user's search history and followed hashtags.

45.    Meta collects and retains location information relating to the use of an Instagram account, including user-entered location tags and location information used by Meta to personalize and target advertisements.

46.    Meta uses information it gathers from its platforms and other sources about the demographics, interests, actions, and connections of its users to select and personalize ads, offers, and other sponsored content. Meta maintains related records for Instagram users, including information about their perceived ad topic preferences, interactions with ads, and advertising identifiers. This data can provide insights into a user's identity and activities, and it can also reveal potential sources of additional evidence.

47.    In some cases, Instagram users may communicate directly with Meta about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users. Social networking providers like Meta typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

48.    For each Instagram user, Meta collects and retains the content and other records described above, sometimes even after it is changed by the user (including usernames, phone numbers, email addresses, full names, privacy settings, email addresses, and profile bios and links).

49.    In my training and experience, evidence of who was using Instagram and from where, and evidence related to criminal activity of the kind described above, may be found in the files and records described above. This evidence may establish the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or, alternatively, to exclude the innocent

from further suspicion. For example, the stored communications and files connected to an Instagram account may provide direct evidence of the offenses under investigation. Based on my training and experience, instant messages, photos, videos, and stories are often created and used in furtherance of criminal activity, including to communicate and facilitate the offenses under investigation.

50.     Account activity may also provide relevant insight into the account owner's state of mind as it relates to the offenses under investigation. For example, information on the account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

51.     Other information connected to the use of Instagram may lead to the discovery of additional evidence. For example, instant messages, stories, and posts, can lead to the identification of co-conspirators and instrumentalities of the crimes under investigation.

52.     Therefore, Meta's servers are likely to contain stored electronic communications and information concerning subscribers and their use of Instagram. In my training and experience, such information may constitute evidence of the crimes under investigation including information that can be used to identify the account's user or users.

**PROCEDURES FOR ELECTRONICALLY STORED INFORMATION**

53.     As a federal agent, I am trained and experienced in identifying communications relevant to the crimes under investigation. The personnel of Meta are not. I also know that the manner in which the data is preserved and analyzed may be critical to the successful prosecution of any case based upon this evidence. Computer Forensic Examiners are trained to handle digital evidence. Meta employees are not. It would be inappropriate and impractical, however, for federal agents to search the vast computer network of Meta for the relevant accounts and then to analyze the contents of those accounts on the premises of Meta. The impact on Meta's business would be severe.

54.     Therefore, I request authority to seize all images, messages, and other content

*Affidavit in Support Search Warrant*

15

from the Instagram account described in Attachment B. To accomplish the objective of the search warrant with minimum interference to the business activities of Meta, to protect the rights of the subject of the investigation, and to effectively pursue this investigation, authority is sought to allow Meta to make a digital copy of the entire contents of the account subject to seizure. That copy will be provided to me or to any authorized federal agent. The contents will then be analyzed to identify communications and other data subject to seizure pursuant to Attachment B.  Relevant data will be copied to separate media. The original will be sealed and maintained to establish authenticity, if necessary.

55.    Analyzing the data to be provided by Meta requires special technical skills, equipment, and software. Searching by keywords for example, often yields many thousands of "hits," each of which must be reviewed in its context by the examiner to determine whether the data is within the scope of the warrant. Merely finding a relevant "hit" does not end the review process. Certain file formats do not lend themselves to key searches. Keywords search text. Many common electronic mail, database, and spreadsheet applications, whose files may have been to electronic mail, do not store data as searchable text. The data is saved in a proprietary non-text format. And, as the volume of the storage allotted by service providers increases, the time it takes to properly analyze recovered data increases dramatically.

56.    Based on the forgoing, searching the recovered data for the information subject to seizure pursuant to this warrant may require a range of data analysis techniques and may take weeks or even months. Keywords need to be modified continuously based on the results obtained; criminals can use code to avoid keyword searches and mislabel files, encrypt files, deliberately misspell certain words, and take other steps to defeat law enforcement.

57.    All forensic analysis of the recovered data will be directed exclusively to the identification and seizure of information within the scope of this warrant. I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18

U.S.C. §§ 2703(a), 2703(b)(1)(A), and 2703(c)(1)(A), and 2703(d), by using the warrant to require Meta to disclose to the government copies of the records and other information (including the content of communications) particularly described in Attachment B.  Upon receipt of the information described in Attachment B, government-authorized persons will review that information to locate the items in Attachment B.

58.   Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) of receipt of the data from the service provider, absent further application to this court.

59.   I, or any other duly authorized federal agent, will personally serve the warrant requested above, and will be assisted by other duly authorized federal investigators.

60.   All forensic analysis of the imaged data will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

/ /

/ /

/ /

/ /

/ /

/ /

/ /

/ /

/ /

/ /

/ /

/ /

/ /

*Affidavit in Support Search Warrant*

17

## **CONCLUSION**

61.    Based on the foregoing, I submit that there is probable cause to believe that the items identified in Attachment B have been used in the commission of a crime and constitute evidence, fruits, and instrumentalities of violations of Title 8 U.S.C. §§ 1324(a)(1)(A)(ii) and (a)(1)(A)(iii) (Harboring and/or Transporting Certain Aliens), Title 8 U.S.C. § 1324(a)(1)(A)(i) (Unlawful bringing of certain aliens into the United States), Title 8 U.S.C. § 1324(a)(1)(A)(v)(II) (Aiding or abetting), Title 8 U.S.C. § 1324(a)(1)(A)(v)(I) (Conspiracy), Title 8, U.S.C. § 1324 (a) (2) (B) (ii) (Bringing in Aliens for Financial Gain), Title 18, U.S.C. § 371 (Conspiracy) (the "Subject Offenses") and that the foregoing will be found on the **Target Account** to be searched, as identified in Attachment A.

I declare under penalty of perjury that the foregoing is true and correct.


*Benjamin Moretti*

Benjamin Moretti

Border Patrol Agent-Intelligence, USBP


Sworn to and subscribed before me this 23rd day of February 2024.


Honorable Michael S. Berg

United States Magistrate Judge

## **Attachment A**

PROPERTY TO BE SEARCHED

Meta Platforms, Inc. ("Meta") is a social networking, electronic communication, and remote computing service provider whose primary computer information systems and other electronic communications and storage systems, records, and data are located in Menlo Park, California.

Meta hosts the following social networking, remote computing, and electronic communication Instagram account that is the subject of this search warrant and search warrant application:

Meta Platforms, Inc.; 1601 Willow Road, Menlo Park, CA 94025; Host of Account associated with name "turitosrt"; Account Identifier: 6923328247; ("Target Account")

## **Attachment B**

ITEMS TO BE SEIZED

### **I. Service of the Warrant**

The officer executing the warrant shall permit Meta Platforms, Inc, ("Meta") as custodian of the electronically stored information described in Section II below, to locate the electronically stored information and deliver it to the same to the officer.

### **II. Items Subject to Seizure**

To the extent that the account described in Attachment A is within the possession, custody, or control of Meta Platforms Inc. ("Meta"), Meta shall disclose the following electronically stored information for that account, even if that information has been deleted but is still available to Meta Platforms Inc., or has been preserved pursuant to a request made under 18 U.S.C. § 2703(f):

Meta Platforms, Inc.; 1601 Willow Road, Menlo Park, CA 94025; Host of Account associated with name "turitosrt";Account Identifier: 6923328247; ("Target Account").

Meta shall produce in "archive" (HTML) form all of the following electronically stored information to the government for the above-mentioned account that was in existence for the period of September 15, 2021 up to and including May 1, 2023: Username(s) and ID number(s) associated with **Target Account**; names; email addresses; phone numbers; credit card information; account creation dates and IP addresses; login and logout dates and accompanying IP addresses; message headers; non-content information about shares (including time, type, author, and recipients) and stories; transaction IP addresses; associated Instagram, Facebook, and third-party accounts; metadata for multimedia messages (i.e., videos and photographs); device information; messages; images and videos; posts, stories; shares; likes; tags; comments; mentions; biography (aka "bio") information; location information; search histories; user records for following, followed, blocked, and blocking; contacts lists; close friends lists; and user-entered physical addresses, birth date, and other related biographical information for the user.

### **III. Search**

The search of the electronically stored information supplied by Meta pursuant to this warrant will be conducted by federal investigators as provided in the "Procedures for Electronically Stored Information" of the affidavit submitted in support of this search warrant and will be limited to the period of September 15, 2021 up to and including May 1, 2023. Information subject to seizure under this warrant shall be limited to evidence:

(a)  Records tending to show alien smuggling, including communications referring to alien smuggling arrangements, smuggling routes, payment, and methods of smuggling, delivery locations, communications referring to the acquisition of vehicles and or individuals to drive those vehicles;

(b)  Records that provide context to any other communication reflecting the criminal activity described in this warrant including any electronic mail or other communication sent or received in temporal proximity to any relevant electronic mail or other communication and any electronic mail or other communication that identifies any users of the subject account;

(c)  Records identifying the user(s) of the **Target Account**; records indicating how and when the Instagram account was accessed or used, to determine the chronological and geographic context of account access, use, and events relating to the crimes under investigation and to the Instagram account owner;

(d)  Records identifying the transmission of currency, funds, or other value that substitutes currency to another location or person by any means. "Any means" includes, but not limited to, through a financial agency or institution; an electronic funds transfer network; an informal value transfer system; or any person engaged in the transfer of funds, operating as an unlicensed Money Service Business. The identity of the person(s) who communicated with the account user about matters relating to violations of the Subject Offenses, including records that help reveal their whereabouts;

which are evidence of violations of Title 8 U.S.C. §§ 1324(a)(1)(A)(ii) and (a)(1)(A)(iii) (Harboring and/or Transporting Certain Aliens), Title 8 U.S.C. § 1324(a)(1)(A)(i) (Unlawful bringing of certain aliens into the United States), Title 8 U.S.C. § 1324(a)(1)(A)(v)(II) (Aiding or abetting), Title 8 U.S.C. § 1324(a)(1)(A)(v)(I) (Conspiracy), Title 8, U.S.C. § 1324 (a) (2) (B) (ii) (Bringing in Aliens for Financial Gain), Title 18, U.S.C. § 371 (Conspiracy) (the "Subject Offenses").